1998 ME 161

**STATE of Maine**

v.

**James STOREY.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 16, 1998.
Decided June 26, 1998.

Andrew Ketterer, Attorney General, Matthew S. Erickson, Assistant Attorney General, Office of Attorney General, Bangor, for State.

Jeffrey C. Toothaker, Toothaker & Chong, Ellsworth, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] James Storey appeals from a judgment entered in the Superior Court (Washington County, *Alexander, J.*) following the entry, pursuant to M.Crim.R. 11(a)(2), of his conditional guilty plea to unlawful possession of schedule X drugs (Class D), in violation of 17-A M.R.S.A. § 1107 (Supp.1997).[1] Storey contends that the District Court (Calais, *Romei, J.*) erred in denying his motion to suppress evidence seized incident to and subsequent to his arrest. We find no error and affirm the judgment.

[¶ 2] The following facts were elicited at the hearing on Storey's motion to suppress. At the time of Storey's arrest, on December 20, 1995, the Maine Drug Enforcement Agency (MDEA) had been working with a cooperating defendant/confidential informant who was to deliver money to Storey for a prior sale of drugs, and possibly make a new purchase of drugs from Storey. It was known to Darrell Crandell, an agent of MDEA, that Storey previously had provided marijuana to the informant. On December 20, the informant was fitted with a transmitter, given money, and he and his vehicle were searched in anticipation of a meeting between the informant and Storey.

[¶ 3] Crandell[2] followed the informant to Storey's residence in Waite. The informant had been given explicit instructions that he was not to go anywhere in a vehicle with Storey.[3] Over the transmitter Crandell heard Storey tell the informant to get into the informant's car, to which the informant protested and attempted to avoid getting in the vehicle. Storey was very insistent, however, that the informant go with him in the vehicle, and the informant did in fact finally comply with Storey's continuing requests.

[¶ 4] Storey drove the vehicle, and Crandell followed it over snow-covered roads in an area Crandell was not familiar with. Crandell had not intended to terminate the operation at this stage because he had hoped to continue gathering evidence supporting a drug trafficking charge. Another agent who was to be involved in the operation, however, had not caught up with Crandell, and Crandell decided that he needed to terminate the operation for the safety of the informant.[4]

[¶ 5] Crandell turned on the blue cruiser lights, and pulled over the informant's vehicle. Storey did not shut off the engine of the vehicle until Crandell's third request to do so. Crandell pointed his weapon at Storey, had him walk to the rear of the vehicle, and "patted him down" to look for weapons because he "didn't want to get hurt, and he didn't want anybody else to get hurt." Crandell thought that some kind of injury was a "distinct possibility" because of Storey's previous arrest in which he was in possession of

---

1. Title 17-A M.R.S.A. § 1107 provides in pertinent part:

   1. A person is guilty of unlawful possession of a scheduled drug if that person intentionally or knowingly possesses what the person knows or believes to be a scheduled drug, and which is, in fact, a scheduled drug....
   Hashish is a scheduled drug. *See* 17-A M.R.S.A. § 1102 (1983) ("Schedule X: ... Hashish").

2. Crandell was accompanied by another agent, but that agent was ill and his role in what happened on the day in question was minimal.

3. Crandell testified:

   Now a very important part of these operations is that the cooperating defendant is told up front, prior to each operation, what the plan is, what are acceptable variations on that plan and what are not.... He was told in this instance, and in every other instance that I was involved, is that there will be no going anywhere with the sus—with the subject of the investigation. That's something that we have to prepare for, have more people for.... It was clear to him that he was not to go for a ride.

4. Crandell knew that several years earlier Storey had been found in possession of cocaine and that there was a firearm present in his vehicle at the time of that arrest.

a weapon and his insistence that the informant get in the vehicle.

[¶ 6] During his pat-down of Storey, Crandell felt a hard object, "cylindrical in nature" in Storey's winter vest pocket,[5] and he reached in and pulled out two prescription bottles, one of which he noticed had no label and in which he could see "black tarry scrape marks or oily marks." At that point, he "knew that . . . they were not weapons." On other occasions Crandell had found that bottles with similar markings contain hashish. Unscrewing the safety cap of one of the vials Crandell found a smaller vial that he immediately recognized as hash oil, and believed that a crime was being committed in his presence. When Crandell held up the bottle, Storey said, "Oh, that's pot oil," or "That's just pot oil." Convinced that he had found hashish oil on Storey's person, Crandell placed him under arrest for possession of the hash oil and read him his *Miranda* rights. He then obtained a warrant to search Storey's residence. Incident to the arrest and during a later search, the police obtained incriminating evidence.

[¶ 7] Following the denial of his motion to suppress, and after the case was transferred to the Superior Court, Storey entered a conditional plea of guilty. He challenges the District Court's denial of his motion to suppress. *See* M.R.Crim.P. 11(a)(2).

[¶ 8] Our review of a motion justice's findings of the historical facts is deferential, but when the challenge is to the legal conclusion drawn from the historical facts our review is *de novo*. *See State v. Rizzo,* 1997 ME 215, ¶ 11, 704 A.2d 339, 343, n. 6 (citing *Ornelas v. U.S.,* 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996) ("ultimate determinations" of reasonable suspicion and probable cause should be reviewed *de novo*, but findings of historical fact for clear error)). *See generally,* Michael R. Bosse, *Standards of Review: The Meaning of Words,* 49 Me.L.Rev. 367 (1997).

## I.

[¶ 9] Pursuant to the Fourth Amendment of the U.S. Constitution, "[i]n order to make a valid traffic stop an officer must have a reasonable articulable suspicion that a criminal offense is being or has been committed or that legitimate safety reasons warrant the stop." *State v. Izzo,* 623 A.2d 1277, 1280 (Me.1993) (quoting *State v. Mehuren,* 594 A.2d 1073, 1075 (Me.1991)).

[¶ 10] Storey argues that the only reason for the stop was "Crandell's misguided notion that his informant was in some sort of fictitious danger, and that notion is not sufficient legal reason to stop Storey's vehicle." We disagree. The court found:

> I believe they had honest concern for the safety of the informant. The informant had specific instructions not to leave Mr. Storey's residence. They . . . had information that Mr. Storey had previously been convicted of possessing cocaine and that there was a firearm present with the cocaine when that circumstance occurred. . . . [T]he evidence concerning Mr. Storey's insistence that the informant leave and get in a motor vehicle with him, after the informant indicated that he did not wish to do that, I think the totality of those circumstances justify stopping the vehicle to . . . make sure that [the informant] was safe.

The evidence fully supported the court's conclusion that Crandell had justifiable concerns about the informant's safety. The court did not err by concluding that Crandell had the necessary reasonable, articulable suspicion to stop Storey's vehicle.

## II.

[¶ 11] Storey also contends that, even if the stop of the vehicle is legitimate, officer Crandell exceeded the limits of a *Terry* search in two respects: first by unnecessarily ordering Storey out of the car at gunpoint, and second, by removing and examining the

---

5. Under cross-examination by the defense, Crandell testified:

    Q. What kind of weapons did you think those could be, if you thought they were weapons initially?

    A. I had no idea. All I knew is they were a hard object. I've been in law enforcement since 1985, and I've been hit with a lot of things. And I'd just as soon avoid that again.

containers in Storey's vest pocket without a reasonable belief that he was grasping an object that could be used to assault him.

[¶ 12] The legitimacy of an investigatory search or seizure requires a two-step analysis. *See State v. Hill*, 606 A.2d 793, 795 (Me.1992) ("[T]he court must first consider whether the officer's action was justified at its inception; and, second, whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place.") (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)).[6]

[¶ 13] Like the permissible seizure of the men in *Terry* whose suspicious behavior was consistent with those "contemplating a daylight robbery—which, it is reasonable to assume, would be likely to involve the use of weapons," Crandell's knowledge and observations at the scene made it "quite reasonable to fear that [Storey was] armed." *Terry*, 392 U.S. at 28, 88 S.Ct. at 1883. The court could reasonably have concluded that approaching Storey with his gun drawn was merely "the tempered act of a policeman who in the course of an investigation had to make a quick decision as to how to protect himself and others from possible danger, and took limited steps to do so." *Id.* Further, between the time he became justifiably concerned with the informant's safety and when he stopped Storey, nothing in Storey's conduct "gave him a sufficient reason to negate that hypothesis." *Id.*

[¶ 14] Crandell's knowledge of Storey's prior arrest in which he was in possession of a firearm, Storey's insistence that the informant get in the car under protest, and the fact that Crandell was essentially alone on the roadside and lacking the assistance of another officer who was in a position to help him, support the court's conclusion that it was reasonable to approach the car with a drawn weapon to implement the investigatory stop and pat-down for weapons.

[¶ 15] Storey further argues that seizure of the "non-weapons oriented object" from his pocket violated the Fourth Amendment, because such a search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884. "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Minnesota v. Dickerson*, 508 U.S. 366, 374, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993).

[¶ 16] Storey relies on *Dickerson*, in which the Supreme Court concluded that the state court "was correct in holding that the police officer ... overstepped the bounds of the strictly circumscribed search for weapons allowed under *Terry* when after feeling a small, hard object wrapped in plastic in the defendant's pocket he formed the opinion that the object was crack cocaine. *Dickerson*, 508 U.S. at 379, 113 S.Ct. at 2138 ("Here, the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to the sole justification of the search under *Terry*: the protection of the police officer and others nearby.").

[¶ 17] Unlike in *Dickerson*, the court in this case found that agent Crandell felt through outer garments a hard object readily accessible to Storey that he believed could be dangerous. Although the District Court did not explicitly state that agent Crandell had probable cause to believe that the object in Storey's pocket was a weapon, he did conclude that it was legitimate for him to examine the contents of the pocket to ensure his safety. The court stated: "You have to allow the police a little bit more leeway when the object is hard, as this object was, and it is being felt through outer garments, and also it being ... readily accessible to the defendant, just right in the vest pocket." Cran-

---

**6.** *Terry v. Ohio* provides guidance for the limits on the search:

> The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must there-fore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

*Terry*, 392 U.S. at 29, 88 S.Ct. at 1879.

dell's removal of the objects was a legitimate safety measure.

■ [¶ 18] The court's finding that once it was apparent to Crandell that one of the bottles did not have a prescription label and had residue on it consistent with hash oil, it was reasonable to open the bottle, is supported by the evidence. Moreover, when Crandell opened the inner vial and immediately recognized the smell of hashish oil, that recognition made its seizure as contraband permissible under the plain-view doctrine, and gave Crandell probable cause to arrest Storey for possession of hashish. *See Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 2307, 110 L.Ed.2d 112 (1990). (Under the plain-view doctrine, if police are lawfully in a position from which they can view an object, its incriminating character is immediately apparent, and the officers have a lawful right of access to the object, they may seize it without a warrant.).

The entry is:

Judgment affirmed.

Mary Margaret Parker, Island Falls, for plaintiffs.

Frank H. Bishop, Stevens, Engels & Bishop, Presque Isle, for Rainald A. Gervais, Sr.

Francis E. Bemis, Hardings Law Offices, Presque Isle, for Rainald Gervais, Inc.

Eugene J. McLaughlin, Jr., Presque Isle, for Gervais Farms, Inc.

David C. King, Barbara A. Cardone, Rudman & Winchell, Bangor, for American Fidelity & MGA Ins. Co.