1999 ME 125

**STATE of Maine**

v.

**Roland D. CONNORS et al.**

Supreme Judicial Court of Maine.

Submitted on briefs June 29, 1999.

Decided Aug. 2, 1999.

Neale T. Adams, District Attorney, John M. Pluto, Dep. Dist. Atty., Caribou, for the State.

Jefferson T. Ashby, Hardings Law Offices, Presque Isle, for the defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] The State of Maine appeals from an order entered in the District Court (Fort Kent, *Daigle, J.*) suppressing evidence obtained from an investigatory stop of vehicles operated by Roland D. Connors and Jake A. Harvey. The State contends that the stops were based on reasonable articulable suspicion and accordingly the court erred by granting the motion to suppress. We agree and vacate the judgment.

[¶ 2] The facts are essentially undisputed. The North Maine Woods (N.M.W.)

acts as an agent for various landowners. In Township 16, Range Nine, W.E.L.S., at Third Pelletier Brook Lake, it maintains a campsite. Although there is a fee for its overnight use, the campsite is accessible without passing through a N.M.W. gate and, therefore, it is not subject to the same controls as other N.M.W. sites. Forest Ranger Lance Martin had received numerous complaints that the site was being used illegally to hold parties and that property was being destroyed during these parties. Martin had investigated the site on previous occasions and observed burned picnic tables, burned shelters, litter, trash, newly seeded lawn destroyed by spinning car tires, and evidence of fires which far exceeded the permitted size.

[¶ 3] On May 9, 1998, at approximately 9:30 P.M., Martin stopped a vehicle traveling on the gravel road leading to Third Pelletier Brook Lake for a litter violation. All of the passengers were minors. A cup smelling strongly of alcohol had been thrown out the vehicle window. The passengers told Martin that they had just left a party that was going on at the N.M.W. campsite. State Trooper Daniel Marquis and Game Warden Chuck Richard responded to Martin's request for backup. When they arrived, Martin briefed them on the situation. The officials proceeded, in separate law enforcement vehicles, toward the party, briefly stopping each vehicle they encountered in order to ask the passengers what was happening at the Lake.

[¶ 4] As they continued toward the campsite, the road narrowed, and the officials exited their vehicles and proceeded on foot. They could see a group of people gathered around a fire burning in the campsite, and could hear music playing. While walking, the officials questioned the occupants of between 6–10 vehicles leaving the area of the campsite. Connors and Harvey were among the individuals in

vehicles leaving the area of the party. Officer Marquis initially approached and questioned Connors, and Warden Richards initially approached and questioned Harvey.[1]

[¶ 5] According to Officer Marquis, "we just stood on the side of the road, and when Mr. Connors came up, he saw us, and we started walkin' towards him" and he stopped. Game Warden Richard watched Harvey's pickup truck stop behind another vehicle. Richard approached Harvey's vehicle, shined a flashlight inside, and detected an odor of intoxicants.

[¶ 6] Harvey was charged with illegal transportation of liquor by a minor, in violation of 28–A M.R.S.A. § 2052 (Supp. 1998), and Connors was charged with operating under the influence, in violation of 29–A M.R.S.A. § 2411 (1996 & Supp.1998). Both Harvey and Connors filed motions to suppress. On July 8, 1998, the court held a joint hearing on the motions. The court concluded that the officials lacked articulable suspicion that either Harvey or Connors was engaged in illegal activity. The Attorney General approved the taking of an appeal by the State pursuant to 15 M.R.S.A. § 2115–A (1980 & Supp.1998) and M.R.Crim. P. 37B(b).

[¶ 7] The State contends that the law enforcement officials had reasonable articulable suspicion sufficient to support a brief investigatory stop. The Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Maine Constitution protects individuals from unreasonable searches and seizures. *See State v. Nelson*, 638 A.2d 720, 722 (Me. 1994). "In order to support a brief investigatory stop of a motor vehicle . . . a police officer must have an articulable suspicion that criminal conduct or a civil violation has occurred, is occurring, or is about to occur, and the officer's suspicion must be 'objectively reasonable in the totality of

---

1. The parties do not challenge, and we therefore do not address, the court's determination that approaching and questioning the defendants constituted a "seizure" implicating the Fourth Amendment. *See State v. Brewer*, 1999 ME 58, ¶ 11–12, 727 A.2d 352, 355.

the circumstances.'"[2] *State v. Brown*, 1997 ME 90, ¶ 5, 694 A.2d 453 (quoting *State v. Cusack*, 649 A.2d 16, 18 (Me. 1994)).

[¶ 8] Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence ... [and] is obviously less demanding than that for probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citations omitted). A police officer need only "articulate something more than 'an inchoate and unparticularized suspicion or hunch.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "Our review of a motion justice's findings of the historical facts is deferential, but when the challenge is to the legal conclusion drawn from the historical facts our review is *de novo.*" *State v. Storey*, 1998 ME 161, ¶ 8, 713 A.2d 331, 333 (citing *State v. Rizzo*, 1997 ME 215, ¶ 11, 704 A.2d 339, 343 n. 6).

[¶ 9] When determining whether a law enforcement official had articulable suspicion, the "key is what the officer observed, and whether it was reasonable in the totality of the circumstances known to him to conclude that a stop was justified." *Cusack*, 649 A.2d at 19 (citing *Nelson*, 638 A.2d at 722). Based on the circumstances of this case, stopping Connors's and Harvey's vehicles was justified. Prior to this stop, Forest Ranger Martin had stopped a vehicle for littering. The passengers in that vehicle, all of whom were minors, had thrown a cup which smelled of alcohol out their vehicle window. When questioned, they informed Martin that a party was in progress at the N.M.W. campsite, at Third Pelletier Lake. That information was sufficient for the officials to suspect that minors were illegally possessing and consuming alcohol at the campsite. Moreover, the use of the campsite was not authorized. Witnessing the defendants leave the campsite area was sufficient to justify a suspicion that Connors and Harvey had trespassed on the campsite, providing an additional basis to briefly stop their vehicles. *See* 17–A M.R.S.A. § 402 (Supp. 1998).

[¶ 10] Based on the circumstances of this case, a suspicion that Connors and Harvey were either consuming or had possession of alcohol while under the legal age, or were trespassing was reasonable and articulable and therefore the stop of their vehicles was justified. Accordingly, we vacate the court order suppressing the evidence obtained from the investigatory stop and remand the case to the District Court.

The entry is:

Order of suppression vacated. Remanded to the District Court for further proceedings consistent with this opinion.

---

**2.** An officer is justified in making an investigatory stop if, at the time of the stop: (1) the officer has an "articulable suspicion" of a civil violation or criminal activity; and (2) such suspicion is "objectively reasonable in the totality of the circumstances." *State v. Lear*, 1998 ME 273, ¶ 5, 722 A.2d 1266, 1267 (citation omitted).