2001 ME 117

**STATE of Maine**

v.

**Daniel BURGESS**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 24, 2001.

Decided: July 20, 2001.

---

Norman R. Croteau, District Attorney, Kevin J. Regan, Asst. Dist. Attorney, Auburn, ME, for State.

Verne E. Paradie Jr., Gosselin, Dubord & Rabasco, P.A., Lewiston, ME, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Daniel Burgess appeals from the judgment of conviction entered in the Superior Court (Androscoggin County, *Delahanty, J.*) following a jury waived trial for operating a motor vehicle while his license was revoked based on his status as an habitual offender (Class C) in violation of 29–A M.R.S.A. § 2557 (Supp.2000),[1] and for operating while under the influence (Class D) in violation of 29–A M.R.S.A. § 2411 (1996 & Supp.2000).[2] On appeal, Burgess contends that the court's denial of his motion to suppress the evidence procured after the stop of his vehicle was in error because the police officer lacked a reasonable articulable suspicion for making the stop. Burgess additionally contends that, even if the motion to suppress was correctly denied, the court erred in denying his motion for acquittal because the parking lot driveway in which Burgess was operating his vehicle was not a "public way," as defined by 17–A M.R.S.A. § 505(2) (1983). Because we conclude that

---

1. 29–A M.R.S.A. § 2557 provides in relevant part:

 1. **Crime.** A person commits a crime as defined in subsection 2 if that person operates a motor vehicle on a public way, as defined in Title 17–A, section 505, subsection 2, when that person's license to operate a motor vehicle has been revoked under this subchapter or former Title 29, chapter 18–A and that person:

 A. Has received written notice of the revocation from the Secretary of State;

 B. Has been orally informed of the revocation by a law enforcement officer:

 C. Has actual knowledge of the revocation; or

 D. Is a person to whom written notice was sent in accordance with section 2482 or former Title 29, section 2241, subsection 4.

2. 29–A M.R.S.A. § 2411 provides in relevant part:

 1. **Offense.** A person commits OUI, which is a Class D crime unless otherwise provided, if that person operates a motor vehicle:

 A. While under the influence of intoxicants; or

 B. While having a blood-alcohol level of 0.08% or more.

the police officer had a reasonable articulable suspicion for making the stop and because Burgess was operating on a "public way," we affirm both convictions.

## FACTUAL BACKGROUND

[¶ 2] On March 23, 2000, Officer Barry Kelly of the Lewiston Police Department received a call from his dispatcher informing him of a complaint that a highly intoxicated male had threatened to take a gun out of his glove compartment and shoot holes in the vehicle parked behind him if it was not moved. The dispatcher advised Officer Kelly of the make, model, color, and plate number of the individual's vehicle, and that the conduct was occurring in a specified apartment building parking lot. When Officer Kelly arrived at the parking lot, he found neither the individual nor the vehicle in question.

[¶ 3] Later that day, Officer Kelly contacted the complainant by phone to discuss the incident further. The complainant indicated that he had witnessed the individual in question driving while intoxicated on several occasions, it had become very serious, he was concerned that somebody was going to get killed due to the man's drunk driving, and he was concerned for the safety of his family. Officer Kelly testified at the suppression hearing that after the conversation he "felt as though this was a very important case to follow-up . . . ."

[¶ 4] On March 25, Officer Kelly returned to the apartment building. He indicated that the parking lot was located in the rear of the building, and a long driveway connected the parking lot with the only entrance and exit to the road. Officer Kelly drove into the driveway and observed a vehicle heading toward him on the driveway that matched the description previously provided to him. Officer Kelly proceeded to stop the vehicle, identify Burgess as the driver and question him. He testified that he made the stop to investigate Burgess's version of the events of March 23, that he saw no evidence of erratic driving or behavior, and that he had received no information on March 25 to lead him to believe the defendant was intoxicated. On making contact, Officer Kelly testified that Burgess's eyes were glossy and red, and he smelled "very strongly" of alcohol. The evidence indicates that Burgess began drinking at his home, elsewhere in the Lewiston–Auburn area. He then drove from his home to a bowling alley, drank some more beer, and drove to the apartment parking lot where he was stopped by Officer Kelly. When asked by Officer Kelly if he had driven from the bowling alley to the parking lot, Burgess, seated in the driver's seat, replied "I am seated here, aren't I." [3] After Burgess failed several field sobriety tests, Officer Kelly placed him under arrest.

[¶ 5] Burgess was indicted on the charges of operating a motor vehicle while under the influence and while his license was revoked. He moved to suppress the evidence gathered as a result of the vehicle stop. Burgess's motion to suppress was denied, and following a jury waived trial, the court denied his motion for acquittal

---

**3.** The complete colloquy where the officer described Burgess's admission to having operated in places other than the parking lot is as follows:

 Q. *Prior to asking him to leave the vehicle, did you have any conversations with him regarding how he arrived in that parking lot?*

A. Basically what I had asked is where he was coming from or if he had driven to that location and his reply to me was, I am seated here, aren't I, something to that effect.

Q. That was in response to your question how he had gotten from the bowling alley?

A. Correct.

on the habitual offender charge and found him guilty.[4] Burgess now appeals.

## I. MOTION TO SUPPRESS

[¶ 6] Burgess contends that Officer Kelly lacked a reasonable articulable suspicion to justify the stop because Officer Kelly did not observe any unlawful or suspicious behavior. Moreover, Burgess contends that the two day old tip that indicated he was always driving intoxicated was insufficient for the officer to stop him to determine if he was driving intoxicated on the day of the stop. Thus, any evidence obtained as a result of the stop should have been suppressed.

[¶ 7] "The fourth amendment to the United States Constitution and article I, section 5 of the Maine Constitution protect us from unreasonable intrusions of police officers and other government agents." *State v. Caron,* 534 A.2d 978, 979 (Me.1987). "An investigatory stop is justified if at the time of the stop the officer has an articulable suspicion that criminal conduct has taken place, is occurring, or imminently will occur, and the officer's assessment of the existence of specific and articulable facts sufficient to warrant the stop is objectively reasonable in the totality of the circumstances." *State v. Tarvers,* 1998 ME 64, ¶ 3, 709 A.2d 726, 727 (inter-

nal quotation marks omitted); *see Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, an officer has the authority to make an investigatory stop as a crime prevention or detection function.[5]

[¶ 8] Reasonable articulable suspicion "is considerably less than proof of wrongdoing by a preponderance of the evidence," but "[t]he suspicion needs to be based on more than speculation or an unsubstantiated hunch." *State v. Eklund,* 2000 ME 175, ¶ 6, 760 A.2d 622, 624 (internal quotation marks omitted). "Our review of a motion justice's findings of historical facts is deferential," and we review a challenge to the legal conclusions drawn from the historical facts de novo. *State v. Connors,* 1999 ME 125, ¶ 8, 734 A.2d 195, 198 (internal quotation marks omitted).

[¶ 9] An investigatory stop based on a tip need not be corroborated by an officer's observation of suspicious conduct for the stop to be constitutionally reasonable. *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) ("[W]e reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person.");

---

4. As to the habitual offender offense, Burgess was sentenced to an eighteen month term of imprisonment with all but six months suspended and a two year period of probation. As to the OUI offense, he was sentenced to a ninety day term of imprisonment to run concurrently with count 1, and he was ordered to pay the sum of $1490.

5. The State contends that the stop can also be justified because the officer was engaged in a community caretaking function. Community caretaking functions, however, are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *State v. Dube,* 655

A.2d 338, 340 (Me.1995) (quoting *State v. Pinkham,* 565 A.2d 318, 319 (Me.1989)). Officer Kelly testified that he returned to the apartment building because he thought it "was a very important case to follow-up with" and because Burgess "had threatened, allegedly, to shoot holes into another vehicle." Thus, the officer was investigating the alleged criminal activity provided by the tip and was not performing a community caretaking function. *See State v. Bickford,* 582 A.2d 250, 251 (Me.1990) (stating that community caretaking functions cannot be a "pretext concealing an investigatory police motive") (quoting *South Dakota v. Opperman,* 428 U.S. 364, 368–76, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)).

*State v. Littlefield,* 677 A.2d 1055, 1057–58 (Me.1996) (rejecting "the proposition that innocuous behavior on the part of a suspect at the time of an investigatory stop is necessarily fatal to a finding that the stop was constitutionally reasonable"). The facts supporting an investigatory search "can be provided by an informant if the information carries sufficient 'indicia of reliability.'" *State v. Cushing,* 602 A.2d 1169, 1170 (Me.1992) (quoting *Adams,* 407 U.S. at 147, 92 S.Ct. 1921). In addition, "whether a tip has gone stale depends upon the nature of the tip and the nature of the criminal activity alleged." *United States v. Gonzalez,* 190 F.3d 668, 673 (5th Cir.1999) ("Staleness is to be determined on the facts of each case.") (internal quotation marks omitted). Staleness cannot be "determined by simply a 'mechanical counting of the time between' the time the tip is received and the time the tip is used." *Id.* (quoting *United States v. Webster,* 734 F.2d 1048, 1056 (5th Cir.1984)).

■ [¶ 10] Officer Kelly received a tip that a male was driving intoxicated at a specific apartment building parking lot and had threatened to shoot another vehicle. The complainant provided the make, model, color, plate number and features of the vehicle. Officer Kelly verified the information with the complainant in a telephone conversation. The complainant's statements led Officer Kelly to believe that this was a very important case to follow up. Two days later, Officer Kelly returned to the apartment building, observed a male driving a vehicle that matched the description he was previously provided, and stopped the vehicle to ask the driver "what his side of the story was." Thus, the court did not err in finding that Officer Kelly's primary motivation for proceeding to the apartment building was to investigate the alleged criminal activity that had occurred two days earlier as described by the com-

plainant, and was not to determine whether Burgess was driving under the influence on that day.

[¶ 11] The specific details provided by the complainant coupled with the officer's verification of the information sufficiently justified the investigatory stop in order to follow up on the previously alleged criminal activity. *See, e.g., Cushing,* 602 A.2d at 1170 (finding the totality of the circumstances, including the information provided by the known informant, sufficient to justify the officer's investigatory stop of the defendants). Therefore, the court's finding was unquestionably correct that two days after receiving the tip Officer Kelly had a reasonable articulable suspicion that a crime had occurred. The stop did not violate the fourth amendment, and the court did not err in denying Burgess's motion to suppress.

## II. MOTION FOR ACQUITTAL

■ [¶ 12] Burgess also contends that the Superior Court erred in denying his motion to acquit on the habitual offender charge because the evidence presented at trial was insufficient to establish, beyond a reasonable doubt, that the parking lot driveway he was operating his vehicle on was a public way.

■ [¶ 13] "When the improper denial of a motion to acquit is alleged, the question before us is whether there was legally sufficient evidence to support the guilty verdict." *State v. Pierce,* 2001 ME 14, ¶ 24, 770 A.2d 630, 637 (internal quotation marks omitted). To determine if evidence is legally sufficient, we consider "whether on the evidence as a whole, assessed most favorably to the state, no trier of fact could rationally find proof of guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

[¶ 14] Because the factfinder could conclude from the evidence that Burgess admitted driving, necessarily on public ways, before arriving at the apartment house parking lot, we need not decide whether the parking lot and driveway are themselves public ways.

The entry is:

Judgment affirmed.