STATE OF MAINE
CUMBERLAND, ss.

A True Copy
Attest: *Jolly A. Bamgh*
Clerk of Courts

SUPERIOR COURT
CRIMINAL ACTION
Docket No. CR-06-2849

STATE OF MAINE,

v.                                                          ORDER

CHARLES TIBBETTS,

DONALD L. GARBRECH
LAW LIBRARY

AUG 02 2007

Defendant.

Before the court is defendant Charles Tibbetts's motion to suppress. Tibbetts primarily contends that there was no reasonable articulable suspicion for the Terry stop that led to Tibbetts's arrest for possession of hydrocodone.

Law enforcement officers are permitted to approach citizens on the streets and ask them questions. However, before a law enforcement officer physically or through a show of authority can restrain a citizen's freedom, he must first have a reasonable articulable suspicion that a crime or other infraction has occurred. Terry v. Ohio, 392 U.S. 1, 27 (1968); State v. Kirby, 2005 ME 92 ¶ 12, 878 A.2d 499, 502. The State has the burden of showing by a preponderance of the evidence that the officer had a reasonable articulable suspicion.

Based on the evidence introduced at a hearing on April 24, 2007, the court makes the following findings:

On October 6, 2006 Lt. William Preis and Sgt. Dan Hayden were in uniform and traveling in a marked Portland Police cruiser on Cumberland Avenue. Lt. Preis is a 13-year veteran of the Portland Police Department. In the course of his career with the Portland Police Department he also worked for 1-2 years as a special agent with the Maine Drug Enforcement Agency and has attended various classes relating to narcotics investigation.

On October 6, while riding in the cruiser as a passenger, Lt. Preis observed a group of 3 males standing together at the entrance to an alley near the YMCA. Lt. Preis was aware that the Portland Police Department had previously received one or more complaints that persons were using and selling drugs in the area of that same alley. Lt. Preis observed one of the males (later identified as Tibbetts) give money to one of the other males. Tibbetts then stuffed his hand down in his pocket as if he were putting something in his pocket. Sgt. Hayden stopped the cruiser, and the three men immediately put their heads down and started walking away quickly in different directions.

Preis got out of the cruiser, called for Tibbetts to stop and, when Tibbetts did not, jogged a few steps after Tibbetts.[1] When Preis caught up to Tibbetts, Tibbetts stopped and Preis began to ask him what he was doing there. Preis did not frisk, pat down, or search Tibbetts at this point. A moment later, however, Sgt. Hayden (who had confronted the other two males) called out that he had found a large quantity of drugs. At that point Preis told Tibbetts he was going to search him for drugs, and Tibbetts then produced the drugs that he is now charged with possessing.

Discussion

The first question – and the issue on which Tibbetts places his emphasis – is whether Lt. Preis had a reasonable articulable suspicion sufficient to justify his action in stopping Tibbetts from leaving the vicinity. The court finds that the actions of Lt. Preis, in calling for Tibbetts to stop and in jogging after Tibbetts to confront him and begin questioning him, constituted a temporary seizure. Preis, by a show of his authority,

---

[1] At one point in his testimony Lt. Preis stated that he had yelled at Tibbetts to stop. Upon further questioning, however, Pries said he was not sure he yelled. The court finds that Pries raised his voice and instructed Tibbetts to stop.

restrained Tibbetts from continuing to walk away. At that point, however, Preis had a reasonable articulable suspicion (as opposed to a mere hunch) that Tibbetts had just been engaged in a drug transaction. Preis was an experienced narcotics investigator. Tibbetts was observed in a location where drug transactions were reported to have occurred. He was in a group of three males, had just given money to one of the others, and was shoving his hand into his pocket in a way that was consistent with stowing drugs he had just obtained. Although Tibbetts's actions up to that point could also have been consistent with an innocent transaction, the furtive behavior of Tibbetts and the other males when the police cruiser stopped (putting down their heads and scattering in different directions) gave rise to a reasonable articulable suspicion on the part of Lt. Preis that Tibbetts had just been involved in a drug transaction.

Although Preis was therefore justified briefly detaining Tibbetts to inquire what he was doing, Preis did not have a basis to search Tibbetts at that time. To be sure, under Terry, Preis would have been able to frisk Tibbetts if he had been concerned that Tibbetts had a weapon. However, as far as the court is aware, a frisk accompanying a Terry stop must be based on a concern about officer safety. See State v. Kirby, 2005 ME 92 ¶ 12, 878 A.2d 499, 502; State v. Storey, 1998 ME 161 ¶¶ 12-13 and n.6, 713 A.2d 331, 334 n.6. Preis did not testify that he was concerned about officer safety and did not undertake a Terry-style frisk for that purpose.

As a result, whether Preis was justified in telling Tibbetts of his intent to search Tibbetts, thereby causing Tibbetts to produce the drugs he was carrying,[2] depends on whether Preis had probable cause to arrest Tibbetts at that time. See State v. Langlois, 2005 ME 3 ¶ 8, 863 A.2d 913, 916 (once police actions go beyond what is permitted by a

---

[2] The State correctly does not argue that Tibbetts's actions, in proffering the drugs after being threatened with an imminent search, constituted either a consent to search or a voluntary surrender of the drugs.

Terry stop, the detention amounts to an arrest that must be supported by probable cause). However, at the point he announced his intention to search Tibbetts, Preis had been informed by Sgt. Hayden that drugs had been found on one of the other males.[3] Probable cause exists when reasonably trustworthy information within the knowledge of the police would warrant a prudent and cautious person to believe that the arrestee had committed a crime. E.g., State v. Forsyth, 2002 ME 75 ¶ 10, 795 A.2d 66, 69, quoting State v. Candage, 549 A.2d 355, 360 (Me. 1988). In this instance, once Sgt. Hayden reported that drugs had been found on another male, Preis had probable cause to arrest Tibbetts, and he would therefore have been entitled to search Tibbetts incident to arrest. Under these circumstances, Preis's announcement that he intended to search Tibbetts, followed by Tibbetts's decision to hand over the drugs upon being threatened with an imminent search, did not violate the Fourth Amendment.

The entry shall be:

Defendant's motion to suppress is denied.

DATED:    May _3__, 2007

_____
Thomas D. Warren
Justice, Superior Court

---

[3] No evidence was offered at the hearing as to how Sgt. Hayden had learned that one of the other males possessed drugs. Tibbetts does not have standing to raise any Fourth Amendment issues with respect to Sgt. Hayden's interaction with the other males.