STATE OF MAINE
AROOSTOOK, ss

SUPERIOR COURT
DOCKET NO. AROCD-CR-16-40406

STATE OF MAINE )
)
)
)
)
VS. )
)
)
)
JOSEPH M. HALEY )
            Defendant )

ORDER ON MOTION TO SUPPRESS

Pending before the court is the Defendant's Motion to Suppress. The Defendant stands charged with two counts of Unlawful Trafficking in Scheduled Drugs (Class B). He seeks an Order from the court suppressing as evidence against him in any subsequent trial any evidence obtained from a search of his cell phone. For the reasons set forth herein, the court denies this motion.

FINDINGS OF FACT

The charges in this matter stem from two "controlled buys" of cocaine from the Defendant. The Maine Drug Enforcement Agency (MDEA) was investigating the Defendant for unlawful trafficking in scheduled drugs. MDEA agents Forrest Dudley and Joey Seeley were leading the investigation and had secured the cooperation of a "Cooperating Individual" (CI) to assist them in their efforts.

After engaging in the usual preliminaries prior to a controlled buy, the agents instructed their CI to make a telephone call to the Defendant to arrange for the purchase of cocaine. On October 23, 2016, the CI called a number that he believed to be the Defendant's cell phone number (207-554-0428) and made contact with the Defendant. He made arrangements to buy a

1

quantity of cocaine. Under the supervision and monitoring of the MDEA agents by Electronic Transmitting Device (ETD); the CI went to the Defendant's home in Presque Isle and purchased what is alleged by the State to be cocaine. The agents decided to arrange for a second purchase of cocaine from the Defendant and again instructed the CI to telephone the Defendant at the same number and the CI did so on October 26, 2016.[1] The CI then went again to the Defendant's home and completed the purchase under the same kinds of supervision that were designed and intended to assure the integrity of any evidence obtained.[2]

In the interests of concealing the identity of the CI for as long as they could and for purposes of preserving and promoting the safety of the CI, consistent with MDEA's usual practice and policy, the agents did not immediately arrest the Defendant although they had probable cause to do so.

The agents did proceed to arrest the Defendant on November 23, 2015, for the felony level offenses of Unlawful Trafficking in Scheduled Drugs. With the express intention of immediately arresting the Defendant, both agents went to the Defendant's small (24' by 24') home at 70 Chapman Street in Presque Isle on that date. They traveled there in an unmarked vehicle. Both agents were attired in casual clothing. They went to the front door of the home and knocked. The Defendant responded by opening the front door. Although he was dressed, he was not wearing shoes.

The agents confirmed that the Defendant was Joseph Haley and then identified themselves as law enforcement officers and indicated that they were placing him under arrest for the offense of Unlawful Trafficking of Scheduled Drugs.[3] The agents indicated that they would

---

[1] It is the court's understanding that these telephone calls were recorded.
[2] These law enforcement "safeguards" are not implicated in this motion.
[3] At hearing of this matter, the court received testimony from Agent Forrest Dudley and from the Defendant. The two witnesses recounted the circumstances of their interaction in different ways. The court accepts Agent Dudley's

be calling the bail commissioner so that the Defendant could be released on an unsecured bond. They asked the Defendant if he had $60 for the bail commissioner and the Defendant responded that he did. The Defendant indicated that he wanted to get his shoes; the agents agreed and stepped into the small (10' by 10') living room area. The Defendant's wallet and cell phone were on a coffee table a few feet away. The Defendant picked up both his wallet and his cell phone and put on his shoes. The agents did a quick cursory check of his wallet for weapons and then returned it to him. The Defendant put both his wallet and his phone into his pockets and accompanied the agents back outside to their vehicle. The driveway area was icy and the agents elected not to place handcuffs on the Defendant until they got to the vehicle, at which point they placed handcuffs on the Defendant with the cuffs in front of his person.

The agents then transported the Defendant to the Fort Fairfield Police Department.[4] They did not interact on the way to the station. After arriving at the police station, the agents provided the Defendant with his Miranda warnings and inquired if he wished to answer questions. The Defendant indicated that he wished to exercise his rights and declined to answer any questions.

When the Defendant emptied his pockets during the standard intake processing, it was apparent that the Defendant had his wallet and cell phone (and some loose change) on his person. The officers asked if the Defendant would consent to a search of his cell phone.[5] The Defendant did not consent. The agents then told the Defendant that they were going to seize the cell phone

---

account of the parties' interaction and rejects the Defendant's account. Aside from the obvious interest that the Defendant has in the outcome of these proceedings, the court found his testimony to be unreliable. The Defendant qualified his testimony by indicating that he had a vivid memory of the events, "for the most part"; he had just awakened from a nap and may have been a "little startled"; and prefaced other testimony with the phrase, "if I remember correctly." Additionally, he maintained that the agents never told him why he was being arrested until they got to the Fort Fairfield Police Department and when they did, they told him it was not a felony but had "something to do with a schedule W" drug. This does not ring true for the court.

[4] It is unclear why the officers took the Defendant to the Fort Fairfield Police Department, but this does not appear to be an issue in the case.

[5] Both parties acknowledge that in light of the fact that the transactions had been initiated by telephone, the Defendant's cell phone was potential evidence in the case.

as potential evidence and that they would get a search warrant authorizing their later search of the phone.

Notwithstanding that the Defendant withheld consent to search of his phone, the officers asked the Defendant if he would disclose the "security code" for the telephone so that they could unlock it and put it in "airplane mode" thereby preventing any incoming data to the phone and also preventing any deletion of data from the phone. The Defendant consented to provide the "pass code pattern" and he testified that Agent Dudley held the phone up for him while he swiped his finger along the "passcode pattern" on his own.[6] Agent Dudley put the cell phone in "airplane mode" but did not otherwise access its contents. He told the Defendant that he would be seeking a search warrant authorizing that access.

Agent Dudley did ultimately obtain a search warrant permitting a search of the cell phone, but he did not accomplish this until January 5, 2017, and he did not actually "search" the phone until January 6, 2017. When asked why he had the Defendant's cell phone in his possession[7] for 43 days before seeking a warrant, Agent Dudley in essence explained that he had been too busy.[8]

Agent Dudley also testified that he was not sure if he had asked the Defendant what his telephone number was after giving the Defendant his Miranda warnings. It seems clear that the

---

[6] Apparently, it is possible to unlock some cell phones by swiping one's finger across the number pad in a particular pattern (rather then simply entering specific numbers) as an alternative means of unlocking the phone and making it available for use. It is not disputed that the Defendant was immediately in custody after greeting the law enforcement officers at his front door. It is also not disputed that the Defendant elected to exercise his Miranda rights. Thereafter the offices asked and the Defendant consented to swiping the "passcode pattern" to unlock his phone. The Defendant raises no challenges to these events and accordingly, the court does not discuss them further.
[7] The cell phone was locked in the secured evidence locker at the state police barracks in Houlton.
[8] In general, Agent Dudley explained that he is on the "lab team" meaning that he assists in cleaning up clandestine methamphetamine labs and there were several of these, both in and out of Aroostook County. He also had other cases involving controlled buys in progress and simply didn't have a chance to draft his warrant request until he did so on January 5th.

Bail Commissioner did ask for all of the Defendant's contact information and entered this information, including the Defendant's phone number of "554-0428" on the bail bond.[9]

## DISCUSSION

In his Amended Motion to Suppress, the Defendant presents a single issue for determination by the court, to wit:

> Whether the warrantless seizure of the Defendant's cell phone and its retention for forty-three (43) days was justified by any exception to the general requirement of the Fourth Amendment for a search warrant?

This issue can be further broken down into two parts: (1) whether the seizure of the Defendant's cell phone after the Defendant was lawfully arrested and brought to the police station was justified, and (2) whether the retention of the cell phone for forty-three days before obtaining a search warrant was justified.

(1)   Seizure of the Defendant's cell phone

"The fourth amendment to the United States Constitution and article 1, section 5 of the Maine Constitution protect us from unreasonable intrusions of police officers and other government agents." *State v. Burgess*, 2001 ME 117, ¶ 7, 776 A.2d 1223 (quoting *State v. Caron*, 534 A.2d 978, 979 (Me. 1987)).  A warrantless search or seizure is generally unreasonable unless it is conducted pursuant to a recognized exception to the warrant requirement. *State v. Melvin*, 2008 ME 118, ¶ 6, 955 A.2d 345.

One commonly recognized exception to the warrant requirement is where evidence is found during a search incident to a lawful arrest.  The Law Court follows the *Robinson-Gustafson* rule, which allows a full search of a person incident to a custodial arrest regardless of the nature of the offense for which the defendant was arrested. *State v. Dubay*, 313 A.2d 908,

---

[9] The Defendant does not challenge the agents' acquisition of this information in his motion and accordingly, the court does not address it further.

5

910 (Me. 1974); *see also U.S. v. Robinson*, 414 U.S. 218 (1973); *Gustafson v. Florida*, 414 U.S. 260 (1973). A full search of the arrestee's body allows the seizure of evidence on the body and evidence immediately associated with the body, such as that found within their pockets. *State v. Foy*, 662 A.2d 238, 241 (Me. 1995).

Here, the seizure of the Defendant's cell phone was reasonable because he was arrested and then searched following his lawful arrest. The cell phone was found in the Defendant's pocket, which is immediately associated with his body under *Foy*. Therefore, the search of the Defendant's body and seizure of his cell phone from his pocket was reasonable and thus did not violate the fourth amendment.[10]

Likewise, the passage of time between arrest and the search incident to arrest does not render the search unreasonable:

> "[O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other."

*U.S. v. Edwards*, 415 U.S. 800, 807 (1974); *see also Dubay*, 313 A.2d at 210.

Here, the time between the Defendant's arrest at his house and the agents' seizure of his cell phone as part of a valid search incident to arrest does not render the seizure unreasonable under *Dubay*. Once the Defendant was lawfully arrested and in custody, the effects in his possession could be lawfully searched and seized without a warrant even though a period of time

---

[10] This analysis assumes that the cell phone is evidence, as the parties agreed. It is important to note that officers must generally secure a warrant before conducting a search of the data on cell phones. *Riley v. California*, 134 S. Ct. 2473, 2485 (2014) (noting that though there are ways to destroy data remotely, this threat can be eliminated by ensuring the phone is not connected to a wireless network). The intrusion into the phone's contents that occurred here was limited to shutting off the wireless capabilities and was within the scope of the consent given by the Defendant.

passed between the arrest at the Defendant's house and the seizure of the cell phone at the police station.

The Defendant argues that this was not a valid search incident to arrest because at the exact time of arrest the cell phone was in his house and thus far away from the Defendant. However, once the Defendant grabbed his cell phone, wallet, and shoes before leaving with the agents, those items became part of his person and could be lawfully searched once he arrived at the police station. This was not a case where an agent himself grabbed the cell phone out of the house, which may have been unreasonable.[11] This was a case where the agents searched the Defendant's person at the police station as part of standard intake procedure, which was a valid search incident to a lawful arrest.

(2)    Retention of the Defendant's cell phone

Time is a very important factor in determining whether there is probable cause to search because if there is too long a delay between the time when the information on which probable cause is gathered and the time when the search is executed, there may no longer be reason to believe that the property is at the same location. Courts consider whether the evidence sought is likely to be at the place to be searched at the time of the search. *State v. Crowley*, 1998 ME 187, ¶ 5, 714 A.2d 834.

---

[11] This is not to say that the agents could not have seized the cell phone directly from the Defendant's house. Because the parties agree that the cell phone was potential evidence, the agents likely would have been justified in seizing the phone under the plain view doctrine. Under the plain view doctrine, the police may seize an object without a warrant if: (1) they are lawfully in a position from which they view an object, (2) the object's incriminating character is apparent, and (3) the officers have a lawful right of access to the object. *Minn. v. Dickerson*, 508 U.S. 366, 375 (1993).

Additionally, the Defendant's characterization of the plain view requirements as prohibiting a seizure where probable cause exists is wrong. The opposite it true. The police *must* have probable cause to believe that an object in plain view is contraband to justify its seizure. *Dickerson*, 508 U.S. at 375 ("[i]f, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—i.e., if its incriminating character is not immediately apparent—the plain-view doctrine cannot justify its seizure" (quotations and citations omitted)).

Here, there is no indication that anything about the cell phone or its contents changed in the forty-three days it was locked away between its seizure and Agent Dudley's execution of the search warrant. The cell phone was placed on airplane mode at the time of seizure, which ensured that it couldn't be accessed remotely. The phone was locked in a secured evidence locker at the state police barracks in Houlton during this time, so it was extremely likely that the evidence sought—the cell phone's data—would be at the place to be searched—on the cell phone—at the time of the search. *See Crowley*, 1998 ME 187, ¶ 5, 714 A.2d 834.

The seizure and later search of the Defendant's cell phone and its data were reasonable under the fourth amendment. Thus, the Defendant's Motion to Suppress is denied.

Therefore, the entry is:

1. The Defendant's Amended Motion to Suppress is DENIED.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: April 28, 2017

E. Allen Hunter
Active Retired Justice
Maine Superior Court