2005 ME 78

**STATE of Maine**

v.

**Roscoe SARGENT.**

**No. PEN–04–466.**

Supreme Judicial Court of Maine.

Argued: April 26, 2005.
Decided: June 23, 2005.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Andrew Benson, Asst. Atty. Gen., Augusta, for State.

Joseph M. Pickering (orally), Largay Law Offices, P.A., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Roscoe Sargent appeals from a judgment entered in the Superior Court (Penobscot County, *Hunter, J.*) after a bench trial convicting him of murder, 17–A M.R.S.A. § 201(1)(A), (B) (Supp.2004). He argues that the court erred in denying his motion to suppress evidence seized during the search of his mobile home. The search warrant directed that the search be executed between 7 A.M. and 9 P.M., but the search continued until 11 P.M. He also contends that photographs taken of him while he was in custody should have been suppressed. He further argues that the court erred by allowing the State's expert to testify and by allowing a videotape into evidence over his best evidence objection. In affirming the conviction, we discuss only his contention regarding the execution of the search warrant.

## I. BACKGROUND

[¶ 2] Sargent's wife, Heather, was killed on or about January 4, 2003. At that time Sargent, a federal probationer, was awaiting trial on other federal charges on which he had been released conditionally. On the morning of January 6, he telephoned the attorney who was representing him in the federal matters and asked to meet with him. The attorney accompanied Sargent to the federal courthouse in Bangor, where the attorney told a deputy marshal that Sargent wanted to surrender himself to federal authorities because he was involved in a state crime, possibly a homicide.

[¶ 3] The Bangor police were notified, and Sargent's attorney gave them a key to the mobile home where Sargent and his wife resided. The attorney stated that Sargent had consented to a search of the

mobile home for his wife. The police used the key to enter the mobile home where they found a dead body with a bag over the head near several dead cats. The police left to request a search warrant, which they obtained from the District Court (Bangor, *Gunther, J.*). The warrant authorized a further search of the mobile home and provided for the warrant's execution during the hours of 7 A.M. to 9 P.M.

[¶ 4] The Bangor police began the execution of the search warrant at about 5 P.M. that same day. They removed the body, later identified as Heather, from the mobile home, and they seized various items. A deputy medical examiner was also present at the execution of the search warrant. The police did not finish executing the warrant until 11 P.M., six hours after they began.

[¶ 5] The search of the mobile home became the subject of a motion to suppress. Among several issues raised in the motion was the claim that the police exceeded the scope of the search warrant by remaining beyond the hours set forth in the warrant. With regard to this issue, the court concluded that the judge issuing the warrant would have been justified in allowing a nighttime search and the intrusion was minimal because Sargent was incarcerated at the time. The court further found that even if M.R.Crim. P. 41(h), whose language the warrant tracked, had been violated, suppression was not the appropriate remedy because the violation was minimal and there was no prejudice to Sargent.

[¶ 6] Heather died from multiple stab wounds. Sargent was indicted for her murder, and he waived a jury trial. Following the bench trial, the court issued thorough findings of fact and found Sargent guilty of murder.[1] The court sentenced Sargent to fifty years' imprisonment.

## II.   DISCUSSION

■ [¶ 7] Sargent contends that the Superior Court should have suppressed the results of the search of his mobile home because the police exceeded the scope of the warrant when they stayed in the home and seized items after 9 P.M. We apply a dual standard of review in the appeal of a denial of a motion to suppress. We review the historical facts found by the court for clear error and the legal conclusions drawn from those facts de novo. *State v. Ullring,* 1999 ME 183, ¶ 8, 741 A.2d 1065, 1067. Because Sargent does not dispute the court's factual findings and argues the court erred in its application of the facts to the law, we review the matter de novo.

■ [¶ 8] The search warrant expressly ordered that the search be conducted between the hours of 7 A.M. and 9 P.M. This mandate came directly from M.R.Crim. P. 41(h) which states: "The warrant shall direct that it be executed between the hours of 7 a.m. and 9 p.m., unless the judge . . ., by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at another time." Thus, the precise issue is whether the police exceeded the scope of a daytime search warrant when they commenced a search in the

---

1.   The indictment charged Sargent with violating 17–A M.R.S.A. § 201(1)(A) (Supp.2004), that is, intentionally or knowingly causing the death of Heather, and 17–A M.R.S.A. § 201(1)(B) (Supp.2004), that is, engaging in conduct that manifests a depraved indifference to the value of human life and causing

the death of Heather. In its written judgment, the court found Sargent guilty of both subsections (A) and (B) of section 201(1). However, the docket entries and the typed "judgment and commitment" in the record refer only to 17–A M.R.S.A. § 201(1)(B).

daytime hours but continued it beyond 9 P.M.

[¶ 9] Other courts have found that a search that begins during daytime hours and ends in the nighttime does not exceed the scope of a warrant that limits its time of execution to daytime. Justice Souter, writing for the New Hampshire Supreme Court, stated that the daytime requirement was satisfied when a search was begun during daylight hours even though it continued well into the night. *State v. Valenzuela,* 130 N.H. 175, 536 A.2d 1252, 1266 (1987). In that case, the search began in the morning, and the officers searched continuously for the next two days and nights. *Id.* In discussing the reason for rules and statutes that limit search warrants to daytime hours unless a judge authorizes otherwise, the court stated it is "the entry of the police in the nighttime, not their mere presence, that is thought to call for particular judicial authorization." *Id.* Discussing the very same New Hampshire search, Justice Breyer, writing for the First Circuit Court of Appeals, stated that "the reason for limiting nighttime searches—preventing abrupt intrusions on sleeping residents in the dark—does not apply once officers have begun the search in the daytime and (as here) have removed the residents." *United States v. Young,* 877 F.2d 1099, 1104 (1st Cir.1989) (citations omitted).

[¶ 10] Other federal cases also hold that the federal rule is not violated when the execution of a search warrant is begun in the daytime but does not end until night. *See, e.g., United States v. Joseph,* 278 F.2d 504, 505 (3d Cir.1960) (holding that search that began at 4 P.M. but not concluded until after 10 P.M. was within the daytime authorization of the warrant); *United States v. Burgard,* 551 F.2d 190, 193 (8th Cir.1977); *United States v. Woodring,* 444 F.2d 749, 751 (9th Cir.1971).

[¶ 11] In this case, there is no suggestion that the police stayed any longer than necessary to complete the search of the mobile home. They stayed only two hours beyond the time in the warrant. They did not intrude upon or frighten the residents by a late night entry. Sargent has shown no prejudice from the fact that the search lasted until 11 P.M.

[¶ 12] For these reasons, we conclude that the Superior Court correctly concluded that the search did not exceed the scope of the warrant, and the police did not violate Sargent's Fourth Amendment rights.

The entry is:

Judgment affirmed.