STATE OF MAINE                    UNIFORM CRIMINAL DOCKET
CUMBERLAND, ss.                   Docket No. CUMUCD-09-942
                                  JAN - CUM - 4/9(...)

STATE

v.                                ORDER ON MOTIONS TO AMEND
                                  BAIL CONDITIONS AND TRANSFER
                                  OF FIREARMS CONFISCATED BY
DAVID MOODY                       GORHAM POLICE DEPARTMENT


BACKGROUND

This matter is before the court on defendant's motions to amend bail conditions

on several grounds, including failing to set the least restrictive conditions, failing to

interview the defendant in making an informed decision, and violating his rights under

the Fourth Amendment. This matter is also before the court on defendant's motion to

transfer firearms confiscated by the Gorham Police Department. Some of defendant's

arguments are meritorious and therefore the motions will be granted, in part.

The Bail Commissioner set the bail conditions following defendant's arrest for

Domestic Violence Assault (Class D) in violation of 17-A M.R.S.A. § 207-A. Those bail

conditions included: (1) no possession or use of any alcoholic beverages or illegal drugs;

(2) no possession of dangerous weapons; (3) random search and testing for alcohol,

illegal drugs and dangerous weapons at any time without articulable suspicion or

probable cause; and (4) no direct or indirect contact with the alleged victim and not enter

her residence, place of employment and place of education. The information before the

Bail Commissioner making the bail decision included the domestic violence assault

charge, the allegations that defendant hit the alleged victim in the head and body several

times, defendant admitted to the hitting, the allegation that defendant choked the alleged victim when she was pregnant, and defendant had a ¼ oz. of marijuana on him when arrested. The Bail Commissioner Information Form also discloses that the following risk indicators were present: weapons and escalation of violence. At defendant's arraignment, the court heard arguments on bail, continued the bail set by the Bail Commissioner while taking defendant's request under advisement pending the State's written opposition and defendant's rebuttal. The matter is now ready for a decision on defendant's motion to amend bail conditions.

## DISCUSSION

1.      What is permissible under the Bail Code and *State v. Ullring*[1]

A.      Bail Code

The Maine Bail Code authorizes a judicial officer to enter an order releasing the defendant preconviction "[o]n a condition or combination of conditions under subsection 3." 15 M.R.S.A. § 1026(1)(B). Subsection 3 provides that if release on a personal recognizance or unsecured appearance bond "will not reasonably ensure" the four purposes of the Bail Code, namely (1) the appearance of the defendant, (2) that the defendant will refrain from any new criminal conduct, (3) the integrity of the judicial process or (4) the safety of others in the community, "the judicial officer shall order the pretrial release of the defendant subject to the least restrictive further condition or combination of conditions" that assure the four purposes. 15 M.R.S.A. § 1026(3). These statutory conditions include, in pertinent part, avoid all contact with the victim of the alleged crime, 15 M.R.S.A. § 1026(3)(A)(5), refrain from possession a firearm or

---

[1] See section 1(B) below.

2

dangerous weapon, 15 M.R.S.A. § 1026(3)(A)(8), refrain from use of possession of alcohol and illegal drugs, 15 M.R.S.A. § 1026(3)(A)(9), and a catch-all provision that includes any other condition "that is reasonably necessary to ensure" the four purposes. 15 M.R.S.A. § 1026(3(A)(18). In making the bail determination, the Bail Code requires the judicial officer take into consideration "reliable information that can be obtained" concerning the nature and circumstance of crime charged, evidence against defendant, and history and characteristics of defendant, including defendant's criminal history and past conduct including drug or alcohol abuse. 15 M.R.S.A. § 1026(4).

B.     *State v. Ullring*

Although not expressly authorized by the Bail Code, the Law Court has held that the random search condition is authorized by the catch-all provision of the Bail Code in section 1026(3)(A)(18). In *State v. Ullring*, 1999 ME 183, ¶ 20, 741 A. 2d 1065, 1071 (Me. 1999), the Law Court stated:

> We are persuaded that the condition of random search is authorized by the catch-all provision of the Maine Bail Code, § 1026(3)A)(18), when the judicial officer is of the opinion that (1) the defendant should be prohibited from possessing illegal drugs; (2) a condition of random search is necessary to ensure the defendant will not violate other conditions; and (3) the conditions of refraining from illegal drug possession and random search are the least restrictive alternative that reasonably will *ensure the presence of the defendant and the integrity of the judicial process*. Bail conditions which prohibit illegal drug use and authorize random searches can serve the purpose of ensuring the presence of the defendant in court. The bail condition of random search is not prohibited by the Maine Bail Code.

*Id.* (emphasis supplied). Since *Ullring*, the Legislature has amended the Bail Code to add two additional purposes to preconviction bail, including to ensure that defendant would refrain from any new criminal conduct and to ensure the safety of others in the

3

community. 15 M.R.S.A. §§ 1002, 1003(1)(A), 1026(2-A) and (3).[2] There is little doubt that the Law Court would sustain the same *Ullring* conditions as serving these new purposes.

As to defendant's argument that the Bail Commissioner should have interviewed him, the Law Court considered and rejected this argument in *State v. Felch*, 2007 ME 88, ¶ 8, stating it was "one of the factors which a court properly considers when applying the criteria for setting bail as provided in the Maine Bail Code." *Id.*[3]

C.    The *Ullring* Test – Reasonable Under All the Circumstances

In *Felch*, the Law Court also affirmed its prior holding in *Ullring*, undermining defendant's argument that subsequent federal case law cast doubts on the continuing vitality of *Ullring*.[4] The *Felch* Court reiterated the holding in *Ullring* when it stated:

> We assume, in the absence of evidence to the contrary, that a bail condition by a judicial officer is reasonable unless the defendant who challenges the condition presents evidence showing that it is unreasonable. *Id.* P 26, 741 A.2d at 1073.

---

[2] "Bail" as defined in the preconviction context means "the obtaining of the release of the defendant upon an undertaking that the defendant shall appear at the time and place required and that the defendant shall conform to each condition imposed in accordance with section 1026 that is designed to ensure that the defendant shall refrain from any new criminal conduct, to ensure the integrity of the judicial process and to ensure the safety of others in the community." 15 M.R.S.A. § 1003 (1)(A). See also 15 M.R.S.A. § 1002 setting forth the purpose and intent of the Maine Bail Code and 15 M.R.S.A. § 1026(1) - (3) containing the more specific standards for release for a crime bailable as of right preconviction.

[3] To the extent that Felch was claiming an unconstitutional bail condition, the Court denied his claim because he failed to seek the remedies available to him in the lower court. *Felch*, 2007 ME 88, ¶ 9.

[4] In *Felch*, the Law Court stated:
> In the past, we have had occasion to address the constitutionality of a consent to search given in the context of a bail bond and have found no inherent constitutional infirmity. *State v. Ullring*, 1999 ME 183, P12, 741 A.2d 1065, 1068.

*State v. Felch*, 2007 ME 88, ¶ 8.

4

*Felch*, 2007 ME 88, ¶ 9. The Court concluded that the defendant failed to seek any of the remedies available to him to demonstrate any unreasonable bail conditions. *Felch* at 9.

The Law Court in *Felch* reiterated the test set forth in *Ullring* for challenging bail conditions:

> We assume, in the absence of evidence to the contrary, that a bail condition by a judicial officer is reasonable unless the defendant who challenges the condition presents evidence showing that it is unreasonable.

*Id.* (citing *Ullring*, 1999 ME 183, ¶ 26).

The *Ullring* Court analyzed the challenge bail conditions and looked at other jurisdictions for the proper Fourth Amendment analysis where the courts concluded that "searches that are authorized by a reasonable bail condition do not violate the defendant's Fourth Amendment rights." 1999 ME ¶ 21, 741 A. 2d at 1071-72. The Law Court stated that "the reasonableness of a condition necessarily depends upon the relationship of the condition to the crime . . . charged and to the defendant's background, including his or her prior criminal conduct." *Ullring*, 1999 ME ¶ 21 (quoting *In re York*, 9 Cal. 4th 1133, 892 P. 2d 804, 815 n. 10.) The Law Court concluded that "[a] bail condition authorizing random searches can only meet Fourth Amendment scrutiny if the condition is reasonable under all of the circumstances." *Id.* at ¶ 25.

The analysis to apply when there is a challenge to a search undertaken conducted pursuant to bail conditions begins as follows: the State meets its burden of showing consent to such a search by pointing to bail conditions permitting the search because the Court assumes that "when a judicial officer makes such a determination and imposes a random search condition . . . in the absence of evidence to the contrary, that the condition is reasonable." *Id.* at ¶ 26. Then, the burden of producing evidence shifts to the

defendant: "A defendant who seeks to challenge such a condition as being unreasonable has the burden of presenting evidence to demonstrate that the condition in that individual case is not reasonable." *Id.*

2.    Are the Moody Bail Conditions Reasonable

A.    Defendant's Evidence

At the motion hearing, counsel for Moody pointed out that defendant lives in Maine and has for much of his life, his father lives in Maine, defendant has been gainfully employed at Idexx for some time, has custody of his young daughter, has no criminal record, has never failed to appear, his guns are unrelated to the domestic violence charges, and he has no history of alcohol or drug abuse.[5] With this information, defendant has presented evidence "on his side of the scales" to show that some of the bail conditions are unreasonable. *United States v. Gates*, 2008 U.S. District Lexis 102989, 18 – 19, 34 (D. Me. Dec. 19, 2008)(citing *Ullring*, 1999 ME at ¶ 26, 741 A. 2d at 1073).

B.    Drug and Alcohol and Random Search Conditions Are Unreasonable

Indeed, the State concedes that the alcohol condition is not reasonable because the record does not reflect that alcohol was involved or implicated in any way. There are other conditions, however, that are also not involved or not implicated and are therefore unreasonable. Although defendant was arrested with ¼ oz. of marijuana on him, this is at best a civil offense[6] and Moody has demonstrated that there is nothing in his background to show that substance abuse is a significant problem. He has no criminal record of any kind. Drugs are not alleged to have been involved with the alleged crime. There is no

---

[5] This evidence was cited by counsel during the bail hearing before the court and repeated in Def.'s Reply at 1.

[6] Possession of this amount of marijuana is a civil offense.  22 M.R.S.A. § 3238.

relationship of these conditions to the crime. Because the random search and drug screens implicate the constitutional protections against unreasonable searches and seizures, the court's analysis of reasonableness must factor in those rights. This court cannot conclude that it is likely that Moody will use alcohol or drugs while on bail; therefore, the bail condition authorizing random searches, as applied to him, are unconstitutional. The circumstances of this case do not justify the imposition of random drug and alcohol searches as a condition of bail.

C.     The Reasonableness of the No Contact Condition

On the other hand, defendant has failed to demonstrate that the bail condition prohibiting contact with the victim of the alleged crime is unreasonable in his case. The State has demonstrated that this condition is reasonable where the defendant was arrested for assaulting the alleged victim, admitted to hitting the alleged victim, and the victim alleged having been choked when she was pregnant with their child. These circumstances justify a determination that a conditions of no contact with the victim of the alleged crime is both necessary and the least restrictive alternative that will ensure the integrity of the judicial process[7] and the safety of others in the community. See *State v. LaPlante*, 957 A. 2d 404, 2008 Vt. Unpub. LEXIS 75 (The no-contact condition was supported by findings related to the defendant's guilt, the nature of the offense, and the recent violence or threats of violence allegedly committed by the defendant, and given the threat of potential harm to the victim and safety of the public, the court did not abuse

---

[7] To "ensure the integrity of the judicial process" means, in the bail context, "safeguarding the role of the courts in adjudicating the guilt or innocence of defendants by ensuring the presence of the defendant in court and otherwise preventing the defendant from obstructing or attempting to obstruct justice by threatening, injuring or intimidating a victim, prospective witness, juror, attorney for the State, judge, justice or other officer of the court." 15 M.R.S.A. § 1003(5).

7

its discretion) (citing *State v. Hendricks*, 173 Vt. 132, 147, 787 A. 2d 1270, 1281 (2001)("[D]omestic violence is rarely a single, isolated act. Rather, it is a recurring and escalating pattern of behavior in which each episode of abuse is interconnected through the abuser's ultimate goal of obtaining control over the victim." 957 A. 2d 404, 2008 Vt. Unpub. LEXIS 75, 6).

D.    The Gun Prohibition and Random Search Condition

The prohibition against the possession of guns and random search for weapons is a more difficult question. If the reasonableness of a condition necessarily depends upon the relationship of the condition to the crime charged and to the defendant's background, including his prior criminal conduct, then, in this case, random search for weapons may be unreasonable. There are no indicia of the use of weapons in the alleged crime or abuse of firearms in defendant's history. On the other hand, the Gorham Police Department removed *nine* firearms from defendant's residence for safekeeping. In setting bail in this case, the Bail commissioner evidently determined that Moody posed a risk because of the escalating violence (presumably because of the alleged choking incident when the victim was pregnant) and the possession of multiple firearms.

Where the gun issue is raised in other cases, there is evidence that the defendant is a felon or a weapon or a threat of a use of a weapon was alleged to have been involved in the crime of domestic violence. E.g. *State v. Peters*, 957 A. 2d 405 (Vt. 2008)(held without bail in case in which weapon involved in alleged felony domestic violence crime and no combination of conditions could protect against the risk of physical violence posed by defendant's release). None of these circumstances exist in this case. We have instead a domestic violence assault crime with no weapons implicated in the crime itself

8

and the apparent lawful possession of nine firearms.

The prosecutor points out that if the defendant were convicted of this domestic violence crime, he would be prohibited from the possession of firearms. Indeed, the prohibition against firearm possession by persons convicted of misdemeanor crimes of domestic violence is constitutionally-sanctioned by federal law. See 18 U.S.C. § 922(g)(9)[8]; see also e.g., *U.S. v. Booker*, 570 F. Supp. 2d 161 (D. Me. 2008). In enacting section 922(g)(9), Congress identified persons convicted of crimes of domestic violence as a predictor of firearm violence. See *United States v. Booker*, 570 F. Supp. 2d 161, 164 (Me. 2008).[9] "[T]he manifest need to protect the victims of domestic violence and to keep guns out of the hands of the people who perpetrate such acts is well-documented and requires no further elaboration." *Booker*, 570 F. Supp. 2d at 164. Federal law also prohibits a person to possess a firearm while subject to a qualifying protection from abuse order. 18 U.S.C. § 922(g)(8).

Domestic violence situations often escalate dangerously. Discussing officers' decision to enter a home without a warrant to ensure the safety of those believed to be at risk of domestic violence, the First Circuit observed:

> In those disputes, violence may be lurking and explode with little warning. Domestic violence victims may be intimidated or suffer from a dependence inherent in the abusive relationship. The signs of danger may be masked. *See generally State v. Greene*, 162 Ariz. 431, 784 P.2d 257, 259 (Ariz. 1989) (en banc) (noting that domestic violence calls "commonly involve dangerous situations in which the possibility for physical harm or damage escalates rapidly"); S. Rep. No. 102-197, at 38 (1991) (noting that "fear of retaliation and

---

[8] 18 U.S.C. § 922(g)(9) prohibits the possession of a firearm by any person who has been previously convicted in any court of a misdemeanor crime of domestic violence.

[9] "[T]he Supreme Court stated that Congress's intent in enacting section 922(g) was 'to keep firearms out of the hands of presumptively risky people.'" 570 F. Supp. 2d at 7 (quoting *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112 n. 6, 103 S. Ct. 986, 74 L.Ed. 2d 845 (1983)).

the lingering stigma of sex crimes and violence in the home" mean that "both literally and figuratively, these crimes remain hidden from public view"); Charles Patrick Ewing, *Battered Women Who Kill* 19 (1987) (noting that battered women often form a "traumatic bond" with their abusers, which leads them to become "extremely dependent" on their abuser and makes them "more incapable of fending for themselves"); Bureau of Justice Statistics, U.S. Dep't of Justice, Rep. No. NCJ-167237, *Violence by Intimates* at v (1998) (noting that one of the "most common reasons given by victims for not contacting the police" was that they "feared retaliation").

*Fletcher v. Town of Clinton*, 196 F. 3d 41, 50 (1st Cir. 1999).

In *Fletcher*, the First Circuit discussed Maine's domestic violence statistics: "Maine has had many episodes of domestic disputes turning violent and even fatal. *See* Maine Coalition for Family Crisis Services, *Domestic Abuse in Maine: Data Project 1990-1995*, at 26 (n.d.) (finding that 51% of all homicides in Maine from 1990-1995 were "domestic violence related")." *Id.* These statistics have not improved over the years. Between 1996 and 2003, more than half the homicides in Maine were DV related. Muskie School of Public Service, "Gun Violence: How Big is the Problem in Maine", (December 8, 2004). More recently, domestic violence-related deaths in Maine have risen from 7 in 2007 to 17 in 2008. Sixty percent of Maine's homicides are related to domestic violence. Driven by the recent domestic violence-related homicides, the Maine CDC issued in December 2008 a public health advisory identifying domestic violence as a public health problem. Maine CDC, Health Advisory for Domestic Violence and Sexual Assault for the General Public, 2008PHADV024 December 9, 2008).

There is a strong relationship between guns in the home and escalating domestic violence. The National Center for Disease Control conducted a study in 2001 on homicide among intimate partners and found that "female intimate partners are more likely to be murdered with a firearm than all other means combined. The study

10

concluded: 'the figures demonstrate the importance of reducing access to firearms in households affected in IPV [intimate partner violence].'" Muskie report, supra (quoting Leonard J. Paluozzi et al, "Surveillance for Homicide Among Intimate Partners – United States, 1991 – 1998," Morbidity and Mortality Weekly Report (MMWR) Surveillance Summaries 50 (October 12, 2001): 1-16. The Muskie report further discloses that a 1997 Archives of Internal Medicine study, examined the risk factors of violent death for women in the home in three United States Counties and "found that when there are one or more guns in the home, the risk of homicide increased more than three times. . . . Furthermore, a gun in the home is the key factor in the escalation of nonfatal spousal abuse to homicide." *Id.* (citing Linda E. Salzman et al., "Weapon Involvement and Injury Outcomes in Family and Intimate Assaults," JAMA 267, no. 22 (1992): 3043 – 3047).

Furthermore, one of the most dangerous time in domestic disputes is when the partners are separation. In discussing the need to balance the combustible nature of domestic disputes and the need for warrantless entry where there are exigent circumstances and the countervailing need to respect basic freedoms guaranteed by the Fourth Amendment, the First Circuit recognized the risk when the cycle of violence is being broken:

> Arrests, protective orders, and other attempts to break the cycle of violence often increase the short-term danger to abuse victims. *See Women and Violence: Hearings before the Comm. on the Judiciary, U.S. Senate, on Legislation to Reduce the Growing Problem of Violent Crime Against Women,* 101st Cong. 2d 145 (1991) (statement of Susan Kelly- Dreiss, Executive Director, Pennsylvania Coalition Against Domestic Violence); Ewing, *supra,* at 13 ("Violence against battered women often escalates any time they attempt to take any control over their lives or the battering relationship."); Lenore E. Walker et al., *Beyond the Juror's Ken: Battered Women,* 7 Vt. L. Rev. 1, 12 (1982) ("One of the most dangerous times for both partners is at the point, or threat, of separation.").

*Fletcher,* 196 F. 3d at 52 .

The defendant has asked that the firearms be returned to him or to his father who resides in Limington, Maine. Balancing the danger firearms present in a domestic dispute with the defendant's freedoms guaranteed by the Fourth Amendment, the court concludes that defendant's firearms be released by the Gorham Police Department to the defendant's father, Jerome Moody of Limington, Maine pending the outcome of this criminal prosecution. The defendant will continue to be subject to a bail condition that he not possess any dangerous weapons, including any and all firearms, and random searches for firearms. Jerome Moody shall not release the firearms to defendant except upon further court order.

The entry is:

Bail is amended to delete any reference to prohibition of alcohol and drugs and random search and testing for those substances. All other conditions shall remain in full force and effect, except that Jerome Moody of Limington, Maine shall possess defendant's firearms until further order of the court.

Date:   April 9, 2009

Joyce A. Wheeler, Justice

12